UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                              :         Chapter 13

GARY J. MARTORANA                                :

        Debtor                                     :         Bankruptcy No. 07-13861bf

...............................................

STATEMENT OF REASONS IN SUPPORT OF ORDER

...............................................

        Upon the debtor's request to confirm his second amended chapter 13 plan dated April 21, 2008,

        And confirmation is opposed by secured creditor Homeq Servicing Corporation and by the standing chapter 13 trustee, William C. Miller, Esq.,

        And I previously denied confirmation of the debtor's first amended plan on April 11, 2008, and also denied the chapter 13 trustee's motion to dismiss without prejudice. I granted the debtor leave to seek confirmation of a further amended plan. See 11 U.S.C. § 1307(c)(5). I also directed that if his second amended plan was not confirmed "the debtor shall not be afforded any further opportunity to propose a chapter 13 plan and this case shall be dismissed. The dismissal may include a bar against future bankruptcy filings for a period of 180 days." Order of April 11, 2008,

        And the debtor has timely proposed a second amended plan,

        And after an evidentiary hearing and consideration of post-hearing memoranda concerning confirmation of that plan and dismissal of his case,

        And the debtor's proposed second amended plan states in relevant part:

        The Debtor shall submit to the supervision and control of the
        Trustee payments in the total amount of $2000 through April,

2008, and thereafter $400 monthly for remaining 51 months of the plan, beginning in May, 2008.

The Debtor and his wife ("the Borrowers") have rescinded the loan made by them and presently held or serviced by HomEq Servicing Corp. ("Homeq"), the first mortgagee on their home located at 663 Bethel Church Rd., Spring City, PA. 19475 ("the Home"), and they have filed an adversary proceeding in this court to enforce their rescission rights against the Homeq. The Borrowers will make their regular post-petition mortgage payments directly to the Homeq.  Upon resolution of the proceeding, the Borrowers shall pay any arrears agreed upon or determined by this court to be owing through the plan, either by selling their home, refinancing their mortgage, or by making additional payments, and an appropriate motion to modify the plan shall be filed at that time.  If the Debtor is unable to achieve confirmation of such a modified plan in a reasonable period of time, as determined by this court, this case will be dismissed.

In the course of this case the Debtor will both resume making his regular mortgage payments directly, and, through his trustee payments, cure the entire mortgage arrears owed to GMAC, which hold a lien on the Debtor's 2004 Chevrolet Trailblazer.  At the conclusion of the Plan, it will be deemed that all arrears are in fact cured and the Debtor will continue thereafter making only his regular payments.

Ex. D-1 (Second Amended Plan, ¶¶ 2-4),

And the debtor filed his voluntary chapter 13 petition on July 9, 2007,

And the debtor and his wife own the real property located at 663 Bethel Church Road, Spring City, Pennsylvania,

And the debtor's Bankruptcy Schedule D disclosed that there are two mortgage liens upon this real property: a first mortgage held by HomEq and a second mortgage held by Harleysville National Bank and Trust,[1]

And HomEq Servicing Corporation filed a secured proof of claim dated July 27, 2007.  This claim asserted a security interest in the real property located at 663 Bethel Church Road, Spring City, Pennsylvania, based upon a mortgage dated December 30, 2004, signed by Gary and Kimberly Martorana.  This proof of claim stated that the mortgage was 12 months in arrears, with a pre-bankruptcy delinquency of $45,891.15 and a loan payoff amount of $390,982.29.  Attached to the proof of claim was a copy of the mortgage and a promissory note from December 2004 signed by the debtor and Mrs. Martorana reflecting a principal loan amount of $361,250.  See claims docket #2,

And on February 15, 2008, the debtor filed a secured proof of claim for Harleysville National Bank and Trust in the amount of $24,000.  See claims docket #5,

And GMAC filed a proof of claim asserting a security interest in a 2004 Chevrolet motor vehicle.  See claims docket #1,

---

[1] The parties agreed that I can take judicial notice of the main case docket and claims docket.  I also take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the bankruptcy schedules of this case.  See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).
While I may take judicial notice of factual statements made by a debtor in bankruptcy schedules, such facts are hearsay if offered by the debtor and thus cannot be accepted as true.  See, e.g., In re Aughenbaugh, 125 F.2d 887, 889 (3d Cir. 1942); Russell, Bankruptcy Evidence Manual, § 201.5, 706-07 (2007-08).  Information in the bankruptcy schedules, though, can be treated as admissions made by the debtor and thus admissible as non hearsay in favor of a non-debtor party.  See, e.g., In re Martell, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005); In re Moore, 269 B.R. 864 (Bankr. D. Id. 2001).

And on August 22, 2007, the debtor filed an adversary proceeding against HomEq and four other defendants, including Deutsche Bank Trust Company New York, docketed at Adv. No. 07-0308. Two answers to this complaint were filed, including one by "Deutsche Bank Trust Co. c/o HomEq Servicing Corporation." The debtor has taken no action against the non-responding defendants; nor has the debtor sought any discovery or pretrial schedule, or requested a trial date,[2]

And the debtor's adversary proceeding seeks to rescind the December 2004 loan transaction pursuant to 15 U.S.C. § 1635,

And the debtor's spouse testified at the confirmation hearing. She acknowledged that the regular monthly mortgage payments due to the first mortgagee were presently $3,200, and that she and her husband had tendered only five or six such mortgage payments since the inception of this chapter 13 case. They were current in payments, however, to the second mortgagee,

And Mrs. Martorana also conceded that she and her husband cannot afford the two monthly mortgage payments, plus their other expenses. Thus, their residence has been listed for sale with a real estate agent for the past 11 months. The listing price presently is $479,000, and there have been no offers made to purchase the property. Accordingly, there was no evidence presented of the likelihood of an imminent sale,

---

[2]The debtor, through his counsel, blames this court, as well as counsel for adversary defendant HomEq, for the delay in having this adversary proceeding scheduled for trial. At the confirmation hearing though, debtor's counsel stated that the debtor's failure to take any further action in this proceeding stems from the debtor's desire to replace one of the corporate defendants with a subsidiary. He further stated that he has made two telephone calls to HomEq counsel, the last made in March 2008, in an attempt to obtain a stipulation among the parties. Debtor's counsel has not received any reply to his oral request for a stipulation, nor has he filed any motion seeking such relief.

4

And Mrs. Martorana insisted that it was necessary for her and her husband to sell their home and move (with their two minor children) into less expensive housing,

And HomEq objects to confirmation of the debtor's second amended plan asserting:

> The plan does not provide an amount to cover Movant's claim nor foes [sic] it specify a specific treatment for repayment of Movant's claim, instead stating Debtor shall repay Movant by sale of the premises, refinancing additional payments and/or a Motion to Modify plan.
>
> Debtor's Plan understates the amount of the Moving Party's claim, and does not provide sufficient funding to pay said claim including present value interest.
>
> Accordingly, Debtor's plan is NOT feasible, as it does not fully compensate the Moving Party.
>
> In addition, the debtor's plan fails to comply with 11 U.S.C. 1322 and 11 U.S.C. 1325.

Homeq Objection, ¶¶ 3-6,

And the trustee asserted at the confirmation hearing that the debtors' second amended plan failed to comply with 11 U.S.C. §§ 1322(a)(1), (b)(5), 1325(a)(5) and (a)(6). More specifically, he argues in his post-hearing memorandum that the debtor has not and cannot comply with his proposed plan requirement to tender regular postpetition mortgage payments pending the outcome of the adversary proceeding; nor is there any evidence regarding the timing and likely outcome of that proceeding,

And a chapter 13 debtor has the ultimate burden of persuasion that his proposed chapter 13 plan meets all of the statutory requirements for confirmation under section 1325(a). See, e.g., In re Hill, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001) ("The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan

5

confirmation."); In re Norwood, 178 B.R. 683, 687 (Bankr. E.D. Pa. 1995). While this burden is lessened when the chapter 13 trustee recommends confirmation, see In re Hines, 723 F.2d 333 (3d Cir. 1983), the trustee has made no such recommendation in this instance,[3]

And in seeking confirmation, a chapter 13 debtor has the burden to propose a plan that clearly sets out his obligations thereunder, so that parties in interest and the

---

[3]To the extent that the debtor complains that the trustee lacks standing to raise his objections at the confirmation hearing, based upon the evidence presented, I note that 11 U.S.C. § 1302(b)(2)(B) grants the trustee the right to appear and be heard at confirmation hearings, as well as the observation made by the Third Circuit Court of Appeals that chapter 13 trustees should independently determine if a proposed plan meets statutory requirements. In re Szostek, 886 F.2d 1405, 1414 (3d Cir. 1989).

The debtor also complains that the chapter 13 trustee must file any objections to confirmation at least five days prior to the hearing, pursuant to Local Bankr. R. 3015-1(c), and the trustee did not do so in this case. That local procedural rule, however, expressly allows the court to waive that pleading requirement. When, as here, the trustee's objection is based upon evidence adduced at the hearing showing that the debtor is unable to comply with the terms of his proposed plan, waiver of the advanced pleading requirement is warranted. Moreover, I permitted a post-hearing briefing schedule so that the debtor could respond to the trustee's objections.

Furthermore, given the debtor's burden to demonstrate that his proposed chapter 13 plan meets all of the statutory requirements for confirmation, once HomEq objected to his plan, the debtor was required to present evidence to address these objections, even if HomEq did not appear at the confirmation hearing. See generally Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 400 n.2 (5th Cir. 1981) (if the defendant has filed a timely answer, the plaintiff has the evidentiary burden at trial, even when the defendant has failed to appear); cf. Anchorage Associates v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (when the movant would have the burden of persuasion at trial, there can be no entry of summary judgment by default).

Finally, the debtor complains that HomEq is a mortgage servicer with no standing to object to confirmation. Debtor's Post-Hearing Memorandum, at 4-5. The debtor's bankruptcy Schedule D identifies HomEq as the secured creditor and HomEq filed a secured proof of claim. Moreover, the debtor's proposed second amended plan, ¶¶ 3, 5 identifies HomEq as the holder of a class 2 secured claim. Clearly, a secured creditor has standing to object to a chapter 13 plan that could affect its rights. Thus, I need not now decide whether a servicer of a mortgage has standing to object to confirmation, as agent for the mortgagee, as the debtor offered no factual support to challenge HomEq's standing. See also In re Robinson, 2002 WL 31685731, at *1 n.1 (Bankr. E.D. Pa. 2002).

6

court can determine whether all statutory requirements for confirmation are met.  See In re Walker, 165 B.R. 994 (E.D. Va. 1994); see generally In re Huddle, 2007 WL 2332390, at *5 (Bankr. E.D. Va. 2007) ("The burden is on a creditor to object to a plan that contains objectionable or ambiguous terms[.]"); In re Schiffman, 338 B.R. 422, 430 (Bankr. D. Or. 2006) (debtor's proposed plan contains an "inappropriate ambiguity"),

And the material terms of the debtor's proposed second amended plan are unclear.  For example, paragraph 4, quoted above, calls for the debtor to tender regular monthly mortgage payments.  Ex. D-1.  This paragraph then refers to mortgage arrears owed to GMAC, a creditor holding a lien on a vehicle, not a residence.  Moreover, the GMAC proof of claim states that the loan arose in 2004.  It is unlikely that the GMAC loan, secured by a vehicle, matures after 2012, which is when the debtor's proposed plan would end.  If so, the cure and maintain provisions of section 1322(b)(5) would be inapplicable.  Therefore, the treatment of GMAC's secured claim under the proposed plan is either unclear or improper,

And, in addition to paragraph 4, Homeq's objection focuses upon paragraph 3 of the second amended plan, ex. D-1 (also quoted above), contending that the timing and method of payment for its secured claim are ambiguous.  I agree.  One cannot be certain whether the debtor intends to repay any allowed secured claim in full, with interest, under section 1325(a)(5)(B), cure the mortgage arrearage while maintaining regular monthly mortgage payments under section 1322(b)(5), or not provide for this secured claim.  If the claim of the first mortgagee is to be repaid in full, the plan is

unclear whether repayment is to occur by refinancing or sale; and the timing of such repayment is also unspecified,[4]

And the trustee seems to construe the debtor's proposed plan as requiring that he tender postpetition mortgage payments as they come due pending the outcome of his adversary proceeding. This construction is consistent with In re Daniels, wherein my colleague, Chief Judge Raslavich stated:

> The present case represents a bankruptcy filing of a type which has become somewhat commonplace. Faced with financial problems, Debtors file a bankruptcy case. Prior thereto they have concluded that in connection with a prepetition mortgage loan transaction a violation of the provisions of one or more consumer protection statutes occurred. After commencement of the bankruptcy case, the Debtors commence an adversary proceeding to assert such claims, in some instances, such as here, requesting that their remedy, if successful, be the rescission of the loan.
>
> The Court herein in no way means to imply that the above course of action is disfavored, let alone prohibited. On the contrary, it is a permissible course of action which this Court has encountered many times. In these circumstances, however, this Court has consistently made clear that while any such litigation is pending the Debtors, since they may ultimately be unsuccessful on their claims, must make/keep

---

[4]I reject for two reasons the debtor's argument—made both at the confirmation hearing and repeated in his post-hearing memorandum—that this plan provision meets all confirmation requirements because a similar provision was included in a chapter 13 plan of Nicolettte L. Davis, Bankr. No. 06-11746(JKF), and that plan was confirmed.
   First, it does not appear that any challenge was made to this provision, and so no judicial determination as to its propriety was ever rendered. Despite independent plan review efforts by bankruptcy trustees and bankruptcy judges, without specific objections from creditors chapter 13 plans that contain improper provisions may be confirmed. See, e.g., In re Szostek, 886 F.2d 1405 (3d Cir. 1989). Second, a plan provision that one bankruptcy judge finds permissible, another may not. Compare In re Watson, 384 B.R. 697 (Bankr. D. Del. 2008), with In re Anderson, 382 B.R. 496 (Bankr. D. Or. 2008). The decision of one bankruptcy judge is not binding upon another, even if the judges are in the same district. See generally Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 431 n.10 (1996); Threadgill v. Armstrong World Industries, 928 F.2d 1366, 1371 (3d Cir. 1991).

> current on payments called for under their Chapter 13 plan,
> including, without limitation but in particular, postpetition
> monthly mortgage payments. Any other practice would, of
> course, be grossly unfair, because if the Debtors fail to make
> their regular monthly mortgage payments, yet do not prevail
> in their lawsuit, they will essentially have reserved to
> themselves in the interim possession of the mortgaged
> premises at no cost.

In re Daniels, Bankr. No. 04-11496, slip. op., at 12, http://www.paeb.uscourts.gov/ pages/ pubopins (Raslavich. J) (April 25, 2005),[5]

And based upon this plan interpretation, the trustee contends that the debtor's proposed amended plan is infeasible, given the debtor's failure to tender all postpetition mortgage payments due as of the confirmation hearing, and the express testimony of his spouse that he cannot afford such payments,

And the trustee's interpretation of the debtor's second amended plan is supported by the debtor's post-hearing memorandum, at 5, wherein the debtor contends that his plan is consistent with the provisions of 11 U.S.C. § 1322(b)(5). That provision permits a chapter 13 debtor to propose a plan that would cure prepetition mortgage arrears

---

[5] When litigation is pending at the time of the confirmation hearing, the debtor's burden might include establishing the likely success in that litigation as bearing on the feasibility of her plan under section 1325(a)(6). See In re Yeager, 2004 WL 422049, at *3 (Bankr. E.D. Pa. 2004); see also In re Shields, 148 B.R. 783 (Bankr. E.D. Pa. 1993) (chapter 13 plan that is premised upon the debtor's setting aside of a foreclosure sale is not feasible when there is no likelihood that the foreclosure sale will be set aside). Moreover, the confirmation process need not await the outcome of that litigation. See generally In re Bell, 314 B.R. 54, 61 n.5 (Bankr. E.D. Pa. 2004) (determination of confirmation should not be delayed by pendency of an adversary proceeding); cf. In re Rocco, 255 Fed. Appx. 638, 641 (3d Cir. 2007) (non-precedential) (pendency of a lawsuit against a secured creditor is, generally, "too speculative in nature to offer adequate protection.").
Here, there was no evidence offered that the debtor's adversary proceeding was likely to result in the rescission of the HomEq mortgage. Thus, I do not consider whether the debtor's proposed plan would meet the requirements of section 1325(a) were rescission granted.

9

while maintaining regular monthly postpetition mortgage payments. See, e.g., Rake v. Wade, 508 U.S. 464, 469 (1993) ("Section 1322(b)(5) expressly authorizes debtors to cure any defaults on a long-term debt, such as a mortgage, and to maintain payments on the debt during the life of the plan."),

And Section 1325(a)(6) requires that visionary or speculative chapter 13 plans not be approved. As stated in In re Fantasia, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997) (citations omitted):

> To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan. 11 U.S.C. § 1325(a)(6). The debtor carries the initial burden of showing that the plan is feasible. Before confirmation, the bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan.

See also In re Scott, 188 F.3d 509 (table), 1999 WL 644380, at *1 (6th Cir. 1999); In re Harris, 199 B.R. 434, 436 (Bankr. D.N.H. 1996) (feasibility requires that the proposed chapter 13 plan have a likelihood of success),

And the debtor has not met his evidentiary burden to demonstrate that he can afford to meet his proposed plan requirement to tender postpetition mortgage payments pending the outcome of his adversary proceeding against the mortgagee. Thus, his proposed plan is not feasible. See In re Haskell, 252 B.R. 236, 244 (Bankr. M.D. Fla.

2000) (chapter 13 confirmation was denied when debtor was delinquent in proposed plan payments),[6]

Accordingly, the debtor here has not met the confirmation requirement found in section 1325(a)(6) and confirmation of his second amended plan is denied. See, e.g., In re Scott, 1999 WL 644380, at *1 ("Without a credible basis to find that he could pay the $100 per month that his plan required, the plan could not be confirmed."); Scarborough v. Chase Manhattan Mortg. Corp., 2006 WL 1050287, at *3 (E.D. Pa. 2006); In re Beene, 354 B.R. 856, 862 (Bankr. W.D. Ark. 2006); In re Cherry, 84 B.R. 134, 139 (Bankr. N.D. Ill. 1988); In re Gale, 8 B.R. 960, 962 (Bankr. D. Md. 1981) (confirmation of chapter 13 plan is denied because future plan payments were "conjectural at best."),[7]

And 11 U.S.C. § 1307(c)(5) states:

---

[6] The debtor also challenges the trustee's right to raise his failure to tender postpetition mortgage payments as a confirmation objection when HomEq has not done so. The debtor's challenge is unpersuasive.

First, HomEq asserted a general objection that the debtor's plan did not comply with section 1325, so the debtor's premise is problematic. Second, the right of a trustee to participate in all chapter 13 confirmation hearings by virtue or section 1302(b)(2)(B), does grant the trustee the ability to object to a proposed plan when the evidence at confirmation justifies that objection, even if a secured creditor could have raised that same issue. See In re Andrews, 49 F.3d 1404 (9th Cir. 1995).

[7] If the debtor's proposed plan were construed as providing for payment to the first mortgagee upon the sale of the residence, the outcome would be no different. First, there was no evidence that any offer to purchase has been made after 11 months on the market. See generally In re Walker, 165 B.R. 994, 1004-05 (E.D. Va. 1994) (confirmation denied when there was no evidence to support liquidation of realty); In re Haardt, 65 B.R. 697 (Bankr. E.D. Pa. 1986); In re Trail's End Lodge, Inc., 54 B.R. 898, 903-04 (Bankr. D. Vt. 1985) (same). Second, there is no firm deadline for such a sale. See generally Matter of Orlando, 53 B.R. 245 (Bankr. W.D. Mo. 1985) (confirmation denied of a plan which proposed to give the debtor an indefinite time to sell real estate). Similarly, there was no evidence offered regarding refinancing; therefore, the plan lacks feasibility as to that funding source. See generally In re Kovalchick, 1995 WL 118171, at *9 (Bankr. E.D. Pa. 1995); In re Haardt, 65 B.R. 697, 702 (Bankr. E.D. Pa. 1986).

11

...

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including–

***

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan[.]

And the debtor was afforded almost one year to submit a viable plan,

And an order was issued on April 11, 2008, which denied confirmation of the first amended plan and notified the debtor that he would be afforded only one more opportunity to propose a viable plan. It is apparent that his financial circumstances preclude him from doing so,

Therefore, the debtor will not be given leave to now propose another amended chapter 13 plan. See generally In re Wile, 310 B.R. 514, 518-19 (Bankr. E.D. Pa. 2004) (undue delay warranted relief under section 1307(c)(5)). Moreover, he will be barred from future bankruptcy filings for a period of 180 days. See generally In re Casse, 198 F.3d 327 (2d Cir. 1999).[8]

---

[8] Upon dismissal of this case, the debtor is not precluded from selling his residence, which is his intention.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :    Chapter 13

GARY J. MARTORANA                    :

      Debtor                              :    Bankruptcy No. 07-13861bf

................................................

ORDER

................................................

AND NOW, this 11th day of June 2008, for the reasons given in the accompanying statement, it is hereby ordered that the chapter 13 case is dismissed.

It is further ordered that the debtor is precluded from filing any future bankruptcy cases, jointly or individually, for a period of 180 days.

The clerk of court shall provide notice of dismissal to all creditors pursuant to Fed. R. Bankr. P. 2002(f).

                                                        */s/ Bruce Fox*
                                         _____
                                                  BRUCE FOX
                                  United States Bankruptcy Judge

copies to:

Mr. Gary J. Martorana
663 Bethel Church Road
Spring City, PA 19475

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106

Leslie Puida, Esq.
Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532